BRUNOT, Justice.
 

 The accused was indicted, tried, and convicted of the crime of' murder. The jury returned a qualified verdict and, after the refusal by the trial court of a new trial, the accused was sentenced to life imprisonment, at hard labor, in the state penitentiary. From the verdict and sentence he appealed.
 

 During the course of the trial, seventeen bills of exception, numbered in consecutive order from one to seventeen, both inclusive, were reserved by the defendant, and one by the state. After the overruling of defendant’s motion and supplemental motion for a new trial, the state reserved its bill to a ruling ■ of the court permitting the defendant, over the objection of the district attorney, to
 
 *101
 
 attach to his bills of exception certain unofficial and unsworn stenographic notes taken by ah employee of defendant’s counsel during the trial.
 

 Bills 1, 3,
 
 7,
 
 and 8 were not referred to in the argument or brief of defendant’s counsel. Assuming that they were considered without merit, we will pass them without comment, except to say that bill No. 1 was reserved to the overruling of the defendant’s motions for a new trial. The original motion for a new trial presents nothing for review. It was made as a matter of form, and the supplemental motion is merely a substantial reiteration of the objections noted in the bills reserved by the defendant during the course of the trial.
 

 The state contends that none of defendant’s bills of exception, except bill 1, was perfected in the manner and as required by article 499 of the Code of Criminal Procedure. This contention was not made in the lower court. The judge signed the bills as they, appear in the record, and we must consider them.
 

 Bill No. 2.
 

 This bill was reserved to the refusal of the judge to specifically charge the jury as follows:
 

 “I charge you that it is the law that a person convicted of murdering his mother becomes in law what is known as an unworthy heir; that as a consequence of being so convicted and thus becoming unworthy that he cannot inherit any part of the estate of that person whom he has murdered. That part of the estate which is thus lost to the unworthy heir and which he would have inherited were it not for his crime, devolves upon, descends to and is inherited by his coheirs, a coheir being, by way of illustration, a brother or sister of the person who has become unworthy by reason of being convicted of killing his ■mother.” ' '
 

 We quote the judge’s per curiam to this bill, which reads:
 

 - “The special charge requested was not a wholly correct statement of the law. See G. G. arts. 964 to 987, both inclusive. Besides, if the law was correctly stated in the requested charge, it would not be applicable to any issue in the case.”
 

 We quote O. O. art. 967, to which reference is made in the judge’s per curiam:
 

 “The unworthiness is never incurred 'by the act itself; it must be pronounced by the court in a suit instituted against the -heir accused of unworthiness, after he has been duly cited.”
 

 The accused was charged with the felonious killing of his mother with malice aforethought.
 

 His two sisters had testified for the state. It is contended tha-t one of them was aggressive in the prosecution of the accused, and it is apparent that the above charge-was requested for the purpose of showing that these witnesses had a financial interest in the conviction of the accused aside from their filial interest in the punishment of the slayer of their mother. No effort was made-by the defendant’s counsel when, these witnesses were on the stand, or at any other time during the trial, to ascertain to what extent, if any, they had knowledge of the fact that the conviction of their brother might increase their interest in the estate of their mother.
 
 *103
 
 It is true that every person is presumed to know the law. If the enforcement of a legal right was at issue here, the contention of defendant’s counsel might have more weight, but the sole object of the requested charge was to affect the credibility of two witnesses without first placing them on their guard.
 

 It is a well-recognized rule of law that a sufficient foundation must be laid before the credibility of a witness may be attacked. The trial judge doubtless had this rule in mind when he held that the requested charge was not applicable to any issue in the ease. We see no error in his ruling)
 

 Bills Nos.
 
 4,
 
 5, and 6.
 

 These bills are considered together both in the defendant’s and the state’s briefs. They were reserved to the overruling by the judge of peremptory challenges, by the defendant, to three tales jurors, viz.: J. L. Smith, A. E. Weldon, and Warford Parks. On the tales jury list, J. L. Smith appears as a resident of ward No. 7, E. A. Weldon as a resident of ward 12, and Warford Parks as a resident of Ward 3. These tales jurors testified, on their voir dire, as follows: Smith, that he resided in police jury ward 3; Weldon, that he resided in police jury ward
 
 4;
 
 and Parks, that he resided in police jury ward 8. The judge’s per curiam to bill No.
 
 4
 
 (Trans, p. 35) completely disposes of these bills. It is as follows:
 

 “Union Parish has two systems of wards. One system is composed of the several police jury wards and the other of the several justice of the peace wards. * * * Article 179 of the Code of-Criminal Procedure of Louisiana requires that each of the 300 names in the general venire list shall be written by the Clerk on a slip of paper ‘together with the number of the ward or place of residence of such person.’ The law, it will be observed, does not limit the ‘ward’ of the juror’s residence to the Police Jury Ward. Any ward that will denote the place of residence of the juror is sufficient. In Union Parish the Justice of the Peace Wards are as well known and recognized as are the police jury wards. It has been the custom or practice of the Jury Commission of that Parish for many years to use the number of the justice of the peace ward rather than the number of the police jury ward to designate the residence of the jurors. * * * There was no question and there can be none that the juror under examination was not the juror intended to be and actually drawn and summoned for service. * * * Besides, there is no suggestion of fraud committed or wrong done to the accused in the matter. I only add further that this juror and the others to whom similar objections were made were not members of the Tegular venire, but were drawn as tales jurors. Article 186 of the Code of Criminal Procedure of Louisiana, relating to Tales Jurors, does not require that the ward or place of residence of the tales juror be written by the Clerk on the slips containing the names of th^ 100 tales jurors.”
 

 Bills Nos. 9, 10, 13, and 16.
 

 These bills are considered together in bbth briefs. They were reserved to the overruling of defendant’s objections to the admission of testimony, offered by the state, to prove the threats, etc., noted in the bills of exception. The objections are based on article 333 of the Code of Criminal Procedure and the ease of State v. Silsby, 176 La. 727, 146 So. 684. The
 
 *105
 
 judge’s per curiam to the bill No. 9 applies to and satisfactorily disposes of the four bills. We quote it:
 

 “The District Attorney, at the proper time, made an opening statement to the jury, explaining at length and in detail, the nature of the charge against the defendant and the evidence by which he expected to establish the same. He delivered his statement orally from his notes. No official stenographic report of his statement was made. I am informed by the bill of exception that there is a stenographic report of said statement, but if so it was not made by the minute clerk, or by the court reporter, or 'by any one sworn in the case for the purpose of taking it. To date no such statement or report of the statement has been offered to the court for filing in the record of the ease. I could not and would not use an unofficial report of the District Attorney’s statement, no matter who made it or however correct it might be in determining what the District Attorney said in his opening statement. Such would not be in keeping with a safe and orderly court procedure.
 

 “X paid very close attention to the District Attorney’s opening statement. According to my recollection of it, he stated that he expected to prove that the defendant had an evil mind and heart and obsessed with a desire to kill; that he had made threats to kill one or more members of his family; that he was cruel and brutal to his mother, Mrs. Rose White, and that his said mother was a detriment to him. The District Attorney has filed a per curiam to this bill. In the paragraph of his per curiam third from the last he relates what he stated to the jury. According to my recollection of his statement, that paragraph contains a substantially correct statement of what he said to the jury on this point.
 

 “In my opinion, with the case of State v. Silsby, 176 La. page 727, 146 So. page 684, recently decided by the Supreme Court, in mind, the opening statement of the District Attorney was broad enough to and did cover all the testimony that was admitted into the evidence in this case.”
 

 The pertinent part of the paragraph of the district attorney’s per curiam to which the judge refers and approves is as follows:
 

 “The state proposed to show that the defendant did have an. evil mind and heart, a desire to kill, that he had often made threats to kill members of his family, particularly his brother Ollie, in connection with his mother’s property; that he was trying to get control of his mother’s property; that he was cruel and brutal to his mother and had stated that she was a detriment to him and he could not put up with her any longer,” etc.
 

 Bills Nos. 11, 12, and 15.
 

 These bills, except as to the witness and the particular question objected to, are the same, but we think it advisable to quote the pertinent parts of each bill. From bill No. 11 (Trans, p. 57) we quote the following:
 

 “Mrs. Bud Ray, being sworn for the State, was asked by the District Attorney the following question: ‘Did she (Mrs. Rosa White) make a statement to you with reference to the manner in which these wounds were made,’ whereupon the said question was objected to as hearsay, and whereupon the Court ruled that the witness. could answer Wes’ or ‘No’ and to which ruling the Defend
 
 *107
 
 ant duly excepted and asked that a bill be noted.”
 

 From bill No. 12 (Trans, p. 59) we quote the following:
 

 “Mrs. Birdie Hodge, á witness for the State, being on direct examination, was asked by the District Attorney the following-: ‘Did Mrs. White make any statement to you with reference to how she obtained the bruise on her face?’ to which question the defense objected that it was hearsay and which objection-was overruled, to which ruling the defendant duly excepted and the witness was permitted to answer ‘Yes.’ ”
 

 ' From bill No. 15 we quote the following:
 

 • “Bud Ray, sworn for the State, was asked by the District Attorney the following ques? tion: T will ask you, Mr. Ray, if during the sleeting spell last winter, did Mrs. White come over and had blood on her? Did she make any statement to you at that time about her' condition?’ whereupon said question was objected to by the Defendant for the reason that it called for hearsay testimony and is irrelevant and whereupon said objection was overruled and the witness was permitted to answer as follows: ‘She did,’ and the Defendant now presents this his special bill of exception.”
 

 The rulings complained of permitted the witnesses named in the bills to testify to a fact peculiarly within their knowledge. This is not hearsay. It is original evidence, and the rulings are, therefore, correct.
 

 After these bills were reserved, the defendant objected to testimony to the effect that the defendant inflicted the wounds upon his mother’s person, but there are no bills in the record presenting these objections to this court. Moreover, Mrs. Kelly and another state witness testified that the deceased stated to them, in-the presence of the defendant, that the defendant had inflicted the wounds upon her person, and that the defendant idl'd not deny the statement.
 

 Bill No. 14.
 

 When B. B. iShill, a state witness, was on the stand, the district attorney, addressing the witness, said: “I will ask you if you have been to the jail since Monroe White has been there?” (Trans, p. 63). The question was objected to, and the objection was sustained. .The witness was then asked: “When is the last time you saw or talked with Monroe White?” The question was objected to, the objection was overruled, and the witness answered: “Yesterday evening.” No further questions were asked or testimony given. We think the bill is without merit. The objection is based upon an alleged effort on the part of the state to impeach its own witness, and that the question called for testimony upon an immaterial point. So far as the bill discloses, it is clear that no effort was made to impeach the witness, and, if the court erred in admitting proof of an irrelevant fact, the error was a harmless one.
 

 Bill No. 17.
 

 This bill was reserved to a ruling sustaining the state’s objection to a question propounded to a witness for the defendant by one' of his counsel. . We quote the question:
 

 “I will ask you, Mr. Strickland, if you know of your own knowledge whether or not that arsenic was covered up by Monroe White
 
 *109
 
 for the purpose of keeping Mrs. White from getting it?” Trans, p. 69..
 

 The court ruled that the question was leading, suggestive, and called for the opinion of the witness.
 

 We see no error in the ruling. As to the purpose of the defendant in covering up the arsenic, if, in fact, it was covered up, the question clearly called for the opinion of the witness.
 

 Finding no reversible error in the rulings excepted to and presented in defendant’s bills, and none appearing on the face of the record, no purpose would' be served by reviewing the state’s bill of exceptions.
 

 For the reasons stated, the verdict and sentence appealed from are affirmed.
 

 O’NIELL, C. J., dissents from the ruling on bill No. 2.